UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| D.L., a minor[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.      ) | No. 3:22-cv-00194-MPB-CSW |
| ) | |
| KILOLO KIJAKAZI,[2] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON THE COMMISSIONER'S DENIAL OF BENEFITS**

This matter is before the court on Claimant's appeal of the Commissioner's denial of his application for Title II Disability Insurance Benefits. (Dkt. 1). Claimant D.L. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on December 26, 2017, alleging an onset of disability on August 1, 2016. (Dkt. 10-5 at 2). His application was initially denied on February 26, 2018, and upon reconsideration on April 12, 2018. (Dkt. 10-4 at 2, 9). On June 30, 2020, Administrative Law Judge Matthias D. Onderak ("the ALJ") denied D.L.'s claim for benefits after a hearing, which the Appeals Council affirmed on November 17, 2020. (Dkt. 10-2 at 8); (Dkt. 10-4 at 90).

The Claimant previously petitioned this Court for review of the ALJ decision, but on November 8, 2021, then-Magistrate Judge Brookman remanded this case to the Social Security Administration at the joint request of the parties. (Dkt. 10-9 at 28). On January 21, 2022, the Appeals Council vacated the decision of the SSA and remanded the case to the ALJ to further evaluate deficiencies in the original decision. (Dkt. 10-9 at 34-35). The ALJ held another hearing on September 14, 2022,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.
[2] Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration, Kilolo Kijakazi.

and issued another unfavorable decision on September 30, 2022. (Dkt. 10-8 at 5-23). On December 5, 2022, D.L. filed this action pursuant to 42 U.S.C. § 405(g), seeking a review of the denial of his benefits. (Dkt. 1). This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motions.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. ----, 139 S.Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court seeks to "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975

F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a three-step evaluation to determine whether a child claimant is disabled. 20 C.F.R. § 416.924(a). Those three steps are:

(1) If a child is working and doing substantial gainful activity, the child is not disabled. 20 C.F.R. § 416.924(b).

(2) If a child does not have a severe medically determinable impairment, the child is not disabled. 20 C.F.R. § 416.924(c).

(3) If a child's severe impairment(s) meet, medically equal, or functionally equal a listing,[3] the child is disabled. 20 C.F.R. § 416.924(d). Functional equivalence of a listing may be determined by evaluating the impairment's impact on the "domains of functioning." 20 C.F.R. § 416.926a(a).

The SSA asks "whether the child's limitation meet one of the many listed categories of disability or are functionally equivalent to one of them." *McCavitt v. Kijakazi*, 6 F.4th 692 (7th Cir. 2021) (citing *Sullivan v. Zebley*, 493 U.S. 521 (1990)). In determining whether a child's impairment is functionally equivalent to a listing, the SSA evaluates the impairment's impact on the "domains of functioning." 20 C.F.R. § 416.926a(a). The six domains of functioning are:

(1) acquiring and using information;

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for yourself; and

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

Specifically, a child is disabled when the impairment results in either: (1) a "marked" limitation in at least two domains; OR (2) an "extreme" limitation in at

---

[3] "The Listings" are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2023).

least one of the domains. 20 C.F.R. § 416.926a(a); *see also L.D.R. v. Berryhill*, 920 F.3d 1146 (7th Cir. 2019). A marked limitation is the equivalent of functioning one would "expect to find on standardized testing with scores that are [between two and three] deviations below the norm," and an extreme limitation is the equivalent of functioning one would "expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)-(3).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II. BACKGROUND

D.L. was nearly 3 years of age on his application date. (Dkt. 10-8 at 6). As such, D.L. has no relevant work experience. The ALJ followed the three-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.924(a), and ultimately concluded D.L. was not disabled. (Dkt. 10-8 at 5-23). Specifically, the ALJ found as follows:

- At Step One, D.L. has not engaged in substantial gainful activity[4] since November 15, 2017, his application date. (Dkt. 10-8 at 6).

---

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

- At Step Two, D.L. had the following severe impairment: Guillain-Barre following Hepatitis A and flu vaccine. (Dkt. 10-8 at 6).

- At Step Three, D.L. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Dkt. 10-8 at 6). *See* 20 C.F.R Pt. 404, Subpt. P, App. 1.

- Also at Step Three, D.L did not have an impairment or combination of impairments that functionally equals the severity of the listings. (Dkt. 10-8 at 7). Specifically, D.L had the following limitations in the six "domains of functioning:"

    (1) <u>No limitation</u> in acquiring and using information;
    (2) <u>No limitation</u> in attending and completing tasks;
    (3) <u>No limitation</u> in interacting and relating with others;
    (4) <u>Marked limitation</u> in moving about and manipulating objects;
    (5) <u>Less than a marked limitation</u> in the ability to care for himself; and
    (6) <u>Less than a marked limitation</u> in health and physical well-being.

### III. DISCUSSION

D.L. asserts three challenges to the ALJ's determination that he is not entitled to disability benefits:

(1) The ALJ's analysis of Domain 6 is not supported by substantial evidence;
(2) Substantial evidence does not support the ALJ's conclusion, based upon the medical expert's testimony, that significant improvement occurred in less than one year from onset; and
(3) The ALJ's analysis of the opinion evidence is not supported by substantial evidence.

(Dkt. 14 at 18). The Commissioner responds that the ALJ's analysis of evidence and ultimate determination are all supported by substantial evidence. The Court addresses each argument in turn.

### A. THE SUPPORTING EVIDENCE FOR THE ALJ'S ANALYSIS OF DOMAIN 6.

Claimant asserts the 6th domain "considers 'the cumulative physical effects of physical and mental impairments and their associated treatments or therapies on your functioning.' 20 CFR 416.929a(l)."[5] (Dkt. 14 at 19). Further, the Claimant insists "substantial evidence does not support the ALJ's conclusion that [Claimant] had a less than marked limitation in this domain given the extensive therapies, serial casting, and surgery that he underwent." (Dkt. 14 at 19).

However, the Claimant omits a key part of the regulation. The Regulation, 20 CFR § 416.926a(l), goes further: "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning *that we did not consider in paragraph (j) of this section*." 20 CFR § 416.926a(l) (emphasis added). Paragraph (j) refers to the 4th domain—moving about and manipulating objects—for which the ALJ determined the Claimant was markedly limited. (Dkt. 10-8 at 15); *see also* 20 CFR § 416.926(j).

Upon review of the ALJ's analysis of the 4th domain, the ALJ indeed noted at least five times the Claimant's involvement with therapy, as well as his serial casting and his surgery on his right foot. (Dkt. 10-8 at 15-17).

As the ALJ accurately stated, the 6th domain "addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being." (Dkt. 10-8 at 21). The ALJ noted the Claimant has not been diagnosed with any mental health impairment. (Dkt. 10-8 at 21). The ALJ noted the Claimant will continue to need specialty treatment. (Dkt. 10-8 at 21). The ALJ noted special education and occupational therapy services were no longer needed. (Dkt. 10-8 at 21). The ALJ discussed the findings of State Agency medical consultants, disagreed with Dr. Rogers' assertion that Claimant was "at age level in the [6th] domain," noted the Claimant's school teachers' observations, and analyzed Dr. Biles' discussion about the Claimant's medical history and outlook for future well-being. (Dkt. 10-8 at 21-22).

---

[5] 20 CFR 416.929a(l) does not exist; presumably, the Claimant meant to cite to 20 CFR 416.926a(l).

The Court does not re-weigh evidence and need not opine on whether it agrees with the ALJ's determination; rather, the Court must only determine whether substantial evidence supported the ALJ's determination. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).

Given the scope of the 6th domain and the ALJ's detailed analysis of the same, the Magistrate Judge finds the ALJ's determination that the Claimant has less than a marked limitation in the domain of health and physical well-being was supported by substantial evidence.

### B. THE ALJ'S RELIANCE ON DR. BILES' TESTIMONY THAT SIGNIFICANT IMPROVEMENT OCCURRED LESS THAN A YEAR FROM ONSET.

"Under the Social Security Act, a claimant's medically determinable physical or mental impairment must have lasted or can be expected to last for a continuous period of not less than 12 months." *Massaglia v. Saul*, 805 Fed. App'x 406, 409 n. 1 (internal quotations omitted) (citing 42 U.S.C. § 423(d)(1)(A)).

Claimant contends that the ALJ's reliance on Dr. Biles' opinion is improper because "[t]here is no logical bridge to Dr. Biles' conclusion that [the Claimant] did not have greater limitations." (Dkt. 14 at 20). Claimant's argument boils down to a challenge to Dr. Biles' conclusion that significant improvement occurred within one year of the alleged onset date. *See* (Dkt. 14 at 20). According to the Claimant, though *some* improvement occurred within one year, Claimant still should have been found to have a "marked" or "extreme" limitation. (Dkt. 14 at 20).

In support of this argument, Claimant cites reports of still finger-feeding himself, an inability to consistently grasp small objects, and continued weakness in his arms. (Dkt. 14 at 20). Additionally, Claimant relies most heavily on Dr. Rogers' opinion that he was "two years below age level in his ability to care for himself" when evaluated in January 2020. (Dkt. 14 at 21 (citing Dkt. 10-7 at 238-39)).

Dr. Biles' testimony did not necessarily contradict these observations, but rather provided an interpretation of the significance of these limitations on the "six

- 7 -

domains of functioning" analysis—something Dr. Rogers failed to do. *See* (Dkt. 10-8 at 19-20). As Claimant concedes, "Dr. Biles was clearly familiar with the record." (Dkt. 14 at 21).

Despite this, Claimant insists that Dr. Biles "conflate[d] the timeline" and that Dr. Biles' "testimony was that improvement began in 2017 and then cited to evidence in 2019 and 2020." (Dkt. 14 at 21); (Dkt. 16 at 4 (citing Dkt. 10-8 at 43-44)). This statement is misleading—and evident by reviewing the transcript passage cited in Claimant's reply brief:

> "ME [Medical Examiner, Dr. Biles]: I'm just reading over my notes and, yeah, 2017 is when they started to notice significant improvement, so -- yeah, so I don't think that would change.
> BY ATTORNEY:
> Q     Okay. So in like July of 2020 when the doctor noted that even with the AFO his feet were pulling inward…"

Put simply, Dr. Biles cited to evidence from 2020 instead of evidence from 2017 because was prompted to do so upon direct examination by Claimant's counsel. (Dkt. 10-8 at 43-44).

Reviewing the evidence from November 1, 2017, the Claimant was indeed showing substantial progress—his physical therapists and occupational therapist evaluated his progress in 10 "short-term goals." (Dkt. 10-7 at 90-93). For each goal, the provider could select either "achieved," ""partially met," or "no progress." The Claimant achieved five (5) of the goals, and partially met the remaining five (5). (Dkt. 10-7 at 90-93). Notably, "no progress" was not selected in reference to any of the goals. (Dkt. 10-7 at 90-93).

Additionally, two days later, on November 3, 2017, the Service Coordinator working with the occupational and physical therapists completed the "First Steps Part C Eligibility Determination Statement," indicating Claimant was only "one and one-half (1.5) standard deviations below the mean," rather than two standard deviations below the mean. (Dkt. 10-7 at 86).

Claimant argues "Dr. Biles acknowledged that someone could have significant improvement, but still be functioning below age level norms." (Dkt. 14 at 22 (citing (Dkt. 10-8 at 44))). However, the converse is also true—the fact that limitations still existed after one year does not preclude a finding that significant improvement occurred. In fact, when Claimant was evaluated with EMG testing in July 2018, another physician noted there were still abnormalities, but that "[t]here has been improvement since the last study on 11/21/16." (Dkt. 10-14 at 422).

An assessment in February 2019 from a neurological physician assessed that improvement of the Claimant's symptoms had been occurring "over the past two years," putting such improvement well within the initial 12-month timeframe. (Dkt. 10-14 at 310). The same doctor noted "[Claimant] seems to be making incredible gains." (Dkt. 10-14 at 310).

Therefore, Dr. Biles' interrogatory responses and testimony are supported by substantial evidence, and a logical bridge exists between the evidence and his conclusion. Multiple different medical providers opined there had been improvement since the onset of symptoms in 2016, even as early as 2017. *See* (Dkt. 10-7 at 90-93); *see also* (Dkt. 10-14 at 422); *see also* (Dkt. 10-14 at 310). Accordingly, the Magistrate Judge finds substantial evidence supports the ALJ's conclusion, based on upon Dr. Biles' testimony, that significant improvement occurred in less than one year from onset.

C. THE ALJ'S ANALYSIS OF VARIOUS OPINION EVIDENCE.

Claimant asserts that because the state agency consultants retained by the ALJ reviewed the entire file, their testimony cannot be considered substantial evidence. (Dkt. 14 at 23). This conclusion is erroneous. While "an ALJ must consider the entire record," there is no requirement that the underlying physicians must do the same—it would be nearly, if not outright, impossible to ensure each medical provider reviewed every other medical provider's detailed notes before forming their own opinion as to the limitations a patient faces. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The regulations make clear the ALJ is the one who should parse

diverging evidence and make a disability determination based on the entire record. 20 CFR § 416.926a(b).

Claimant also asserts the ALJ's reliance on the opinions of his teachers as persuasive evidence was erroneous because they were not physicians. (Dkt. 14 at 24). However, the Seventh Circuit is clear that "the SSA need not accept only physicians' opinions." *Diaz v. Chater*, 55 F.3d 300, 306 n. 2. (7th Cir. 1995). Indeed, the regulations contemplate teachers and others wherein the regulations state that the SSA "will look at the information we have in your case record … [including] everything you do at home, at school, and in your community." 20 CFR § 416.926a(b).

Accordingly, the Magistrate Judge finds the ALJ's analysis of the various opinion evidence was appropriate, supported by substantial evidence, and that the ALJ committed no harmful error.

## IV. Conclusion

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F.App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits . . . despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Finding no legal basis presented by D.L. to reverse the ALJ's decision, the Magistrate Judge **RECOMMENDS** the decision of the ALJ be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED.**

**Date: January 12, 2024**

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Distributed electronically to all ECF-registered counsel of record.**